UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JARRELL SANDERSON,<br>    Petitioner, | CIVIL ACTION NO.<br>3:14-CV-169 (JCH) |
| v. | |
| UNITED STATES OF AMERICA,<br>    Respondent. | FEBRUARY 24, 2015 |

**RULING RE: AMENDED/EXPANDED PETITION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (Doc. No. 25)**

    Petitioner Jarrell Sanderson is currently serving a 310-month sentence of imprisonment following his plea of guilty to one count of conspiracy to commit sex trafficking of children (Count One of the Indictment) and two counts of sex trafficking of children (Counts Two and Four of the Indictment; the substantive crimes alleged to be the objects of the conspiracy charged in Count One).  See Judgment (Doc. No. 8-1 at 3–5); United States v. Sanderson et al., No. 10-cr-56 (JCH) (D. Conn.) (Doc. No. 169).  He now moves to vacate his conviction and plea of guilty so that he may proceed to trial. See Amended/Expanded Petition Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended Petition") (Doc. No. 25); 28 U.S.C. § 2255; Indictment (Doc. No. 1-1 at 38–41).

    Although the repetitiveness and lack of clarity in parts of the Amended Petition make it something of a challenge to discern what claims Sanderson purports to raise, the court reads the Amended Petition to raise two primary claims as to Count One, and one as to Counts Two and Four.  As to the conspiracy charge in Count One, Sanderson claims that he did not understand the basis of his guilty plea (specifically, (1) that proof of

1

an agreement is a required element of a conspiracy charge, and (2) various burdens and standards of proof at trial with respect to conspiracy charges), and would not have pled guilty as to Count One but for the misunderstanding, which was caused by ineffective assistance of counsel.  As to Counts Two and Four, Sanderson claims that he did not understand the basis of his guilty plea (specifically, that Counts Two and Four were not merely based upon his liability for the acts of his alleged coconspirator) and would not have pled guilty as to Counts Two and Four but for this misunderstanding, which was caused by ineffective assistance of counsel.  Disposing of these claims suffices to deny the Amended Petition in toto because any other claims are predicated on, and thus must fail in light of the analysis of, these primary claims.  See infra n. 1 (impermissible constructive amendment of the Indictment), n. 5 (cumulative weight of error).  For the reasons set forth below, the court rejects these claims and dismisses Sanderson's Amended Petition (Doc. No. 25).

I.      BACKGROUND

On February 25, 2010, in the case of United States v. Sanderson et al., No. 10-cr-56 (D. Conn.), a grand jury returned a five-count Indictment against Sanderson and an alleged coconspirator charging, inter alia, that Sanderson had conspired to commit sex trafficking of children as to two different victims (Count One), see 18 U.S.C. § 1594(c); committed sex trafficking of children as to two different victims (Counts Two and Four, with each corresponding to one victim), see 18 U.S.C. § 1591(a)(1), (b)(2); and committed sex trafficking by force, fraud, and coercion as to two different victims (Counts Three and Five, with each corresponding to one victim), see 18 U.S.C. § 1591(a)(1), (b)(1).

On the eve of trial, without a negotiated plea agreement, Sanderson proffered

guilty pleas as to Counts One, Two, and Four, which the court (Kravitz, J.) accepted. See Change of Plea Hearing Transcript ("Change of Plea Hrg. Tr.") (Doc. No. 8-1 at 6–47). The court permitted Sanderson to change his plea only after a lengthy colloquy during which it ensured that Sanderson was "enter[ing] a guilty plea that [wa]s voluntary and . . . ma[d]e related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences." United States v. Ruiz, 536 U.S. 622, 629 (2002) (alterations and quotation marks from original omitted).

On June 7, 2011, the court sentenced Sanderson principally to 310 months' imprisonment. See Judgment. Sanderson initiated the present action with a filing docketed on February 10, 2014; on Sanderson's Motion (Doc. No. 21), the court allowed Sanderson to amend his original filing, and accordingly proceeds to consider the Amended Petition (Doc. No. 25). See Order (Doc. No. 24).

## II. STANDARD OF REVIEW

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002). "[C]ollateral attack on a final judgment in a criminal case is generally available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589–90 (2d Cir. 1996) (citation and internal quotation marks omitted).

In a section 2255 motion, the burden is on the petitioner to prove by preponderance of the evidence his entitlement to relief. See Napoli v. United States, 45 F.3d 680, 683 (2d Cir. 1995); Gotti v. United States, 622 F.Supp.2d 87, 91 (S.D.N.Y. 2009).

Nonetheless, the general rule that a court must construe pro se litigants' pleadings liberally "to raise the strongest arguments that they suggest" applies equally in the context of section 2255 motions. Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

In deciding a section 2255 motion, the court will generally hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see also Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (no hearing is required where petitioner's "allegations are 'vague, conclusory, or palpably incredible'") (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); United States v. Aiello, 814 F.2d 109, 113–14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."). "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." Gonzalez, 722 F.3d at 131.

**III.    DISCUSSION**

    A.    <u>Count One</u>

        1.    Inadequate elaboration of crime charged in Count One

Sanderson argues that the court should vacate his conviction and allow him to withdraw his plea of guilty as to Count One (the conspiracy charge) because the Indictment was inadequate to give him notice of the crime with which he was charged (and, due to the ineffective assistance of counsel, he was unaware of and thus did not challenge this inadequacy at any earlier stage in the proceedings).   Specifically, Sanderson contends that Count One was legally insufficient because it only charged that he and another individual "did conspire to" do certain acts and not that there was an agreement among two or more individuals.

To the contrary, the Indictment was legally sufficient, and it is unquestionable that Sanderson did understand the nature of the crime to which he pled guilty.   Because there was nothing objectionable in these respects, <u>a fortiori</u> Sanderson's claims of ineffective assistance of counsel with respect to these issues, as well as any other claims stemming therefrom,[1]  fail.

As Judge Learned Hand stated:

> To allege that the defendants <u>conspired</u> is, at least, to allege that they <u>agreed</u> to do the matters which are set forth as the substance of their conspiracy. . . .   [T]aken at its lowest terms, to allege a <u>conspiracy</u> is to allege an <u>agreement</u>.   . . .
>
> . . . It is true that allegations in an indictment must be allegations of fact; but this requirement must not be pressed with a schoolman's logic. In all pleadings, from

---

[1] For example, Sanderson also claims that, to remedy the Indictment's inadequacy, counsel or the court, or both, impermissibly "constructively amend[ed]" at the change-of-plea hearing to charge that there was an agreement.   Amended Petition at 6.   The posited inadequacy in the Indictment does not exist, so this purported constructive amendment did not occur.

5

> time immemorial, there have been allegations of so-called fact which presuppose for their truth the existence of certain rules of law. Allegations regarding 'real property,' 'seisin,' 'possession,' 'ownership,' and others, have been common from the earliest times, and no one has ever thought that it was necessary to allege all the facts from which the 'mixed' conclusion arose. To do so would be to enormously incumber the pleadings, and the law, even in its pedantic days, has not been theoretically consistent to that degree.

United States v. White, 171 F. 775, 776–77 (C.C.S.D.N.Y. 1909) (emphasis added); see also United States v. Kushner, 135 F.2d 668, 673 (2d Cir. 1943) ("The indictment charged appellant with specific violations of the particularly cited statutes, in substantially the statutory language. Ordinarily an indictment in this form is sufficient."); see also Wright v. United States, 108 F. 805, 811 (5th Cir. 1901) ("When it was charged that they 'conspired' . . . [i]t was meant that they had agreed together. . . . [N]o one reading the indictment could come to any other conclusion in regard to its meaning, 'and when this is the case an indictment is good enough.'" (quoting Price v. United States, 165 U.S. 311, 315 (1897))).

Even assuming that there were some deficiency with the Indictment, "[c]onvictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. . . . [I]mperfections of form [in an indictment] that are not prejudicial are disregarded, and common sense and reason prevail over technicalities." United States v. Goodwin, 141 F.3d 394, 400–01 (2d Cir. 1997) (internal quotation marks omitted). Moreover, "[a] court is not required to follow any particular formula" when it "question[s] the defendant to confirm that he possesses the requisite understanding" of the charges. United States v. Blackwell, 199 F.3d 623, 626 (2d Cir. 1999) (first alteration in original).

As a question of prejudice (and, thus, Sanderson's subjective understanding of the proceedings), there simply is no merit to Sanderson's contention that the Indictment was

inadequate (i.e., that he did not understand the nature of the crime charged against him). During the plea colloquy, the court explained that it would have the government recite the elements of the crimes charged, see Change of Plea Hrg. Tr. at 23, immediately following which a government attorney explained that, to prove the conspiracy charged in Count One, "the government must prove that two or more persons entered into [an] unlawful agreement . . . ," id. at 23–24.  Sanderson confirmed that he understood the elements that needed to be proved.  See id. at 24.  He then explained "in [his] very own words what [he] did that [he] th[ought] ma[d]e[ him] guilty of this offense."  Id.

The discussion at this point was not one-way: Sanderson described the facts of the case as he understood them, and even discussed the scope of the agreement.  The following exchange reflects some of what was said, and is just one example confirming that Sanderson understood that entering an agreement was an element of the offense conduct for Count One:

> THE DEFENDANT: Yes, we didn't make a pact, like a conspiracy, to have the girls work for us per se, but I did show her how to post the ads.
>
> THE COURT: Right. <u>A conspiracy is really just an understanding or an agreement with another person to accomplish a goal. It doesn't have to be something in writing; it can just be an understanding.</u>
>
> THE DEFENDANT: All right.
>
> THE COURT: Okay?
>
> THE DEFENDANT: Yes.
>
> THE COURT: So you did have an understanding with Ms. Delia that these victims were going to be, these minors were going to be, used for prostitution purposes?
>
> THE DEFENDANT: Yes.

Id. at 28–29 (emphasis added).

7

"A defendant's statements during the plea colloquy are not to be taken lightly because '[s]olemn declarations in open court carry a strong presumption of verity. . . . [S]ubsequent . . . contentions that in the face of the record are wholly incredible'" are "subject to summary dismissal." See United States v. Cabrera, 563 F. App'x 861, 863 (2d Cir. 2014) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Thus, not only is the Indictment sufficient from a purely legal perspective but, as a question of prejudice to the defendant (i.e., from a subjective perspective), the court can only conclude that Sanderson was not prejudiced by any putative lack of clarity in the Indictment—that is, that he did understand the nature of the crime charged when he proffered his guilty plea.  The court thus rejects as baseless the entirety of Sanderson's claims arising from the purported inadequacy of the Indictment as to Count One, including any claims of ineffective assistance of counsel that arise therefrom.

2.      Ignorance of certain details of burdens and standards of proof at trial

Sanderson also contends that his "Trial Attoeny never discussed any of the remaining critical Evidentiary Burdens and Standards Of Proof necessary to establish the existence of Conspiracy under 18 U.S.C. $ 1594(c)." Amended Petition at 9 (thus in original); see also id. at 22 ("Trail Attorney never discussed any of the remaining Evidentiary Burdens and Standards Of Proof necessary to establish the existence of Conspiracy pursuant to 18 U.S.C. § 1594(c)." (thus in original)).  Sanderson goes on to specify by providing a litany of observations (apparently drawn from case law or other authorities, although without any citations) about how a conspiracy charge may and may not be proved:

> AS IT PERTAINS TO THE CONSPIRACY COUNT,
> this Petitioner was never informed of such Burdens/Standards Of Proof as: (1)

8

> Conspiracy, as an Inchoate Crime, commences with the Agreement; that (2) Actual Knowing and Willing Participation is established through the specifics deriving from the Agreement; (3) Evidence of an explicit Agreement is NOT required, and that the Fact of an existing Agreement may be established through CIRCUMSTANTIAL Evidence; (4) such as by proof of a TACIT Understanding will suffice; that (5) it is UNNECESSARY to prove that an alleged Conspirator knew of or agreed to all of the Details of the Conspiracy; and/or, that (6) it is UNNECESSARY to prove that an alleged Conspirator knew of or agreed to every Criminal Objective arising out of the Conspiracy.
> SUMMARILY, THAT THE ESTABLISHMENT OF A CONSPIRACY (7) merely requires that there be some Evidence from which it can be reasonably INFERRED that the Person charged with Conspiracy, knew of the existence of the Scheme alleged in the Indictment, then KNOWINGLY joined/participated therein; or, at the very least, (8) that the Defendants merely SHARED SOME KNOWLEDGE of the Conspiracy's unlawful Aims/Objectives; of which (9) can be proven by Evidence that the Defendant either participated in nothing more than Conversations directly related to the Substance of the Conspiracy; and/or, (10) by Evidence that the Defendant possessed certain Items deemed important to the Conspiracy MOREOVER, (11) all Evidence, even Evidence related to Acts committed BY CODEFENDANTS IS ADMISSIBLE AGAINST ANOTHER DEFENDANT; and being that this Petitioner's Case contained various Testimonys it should have been discussed that (12) a Conviction may be made on the Testimony of A SINGLE ACCOMPLISH! ! !

Amended Petition at 37 (all capitalization, punctuation, and spelling thus in original). A few lines of this page purport to reflect limits on the government's ability to prove a conspiracy charge, while many others are observations about the many liberties that the government has in proving such a charge. Id.

Assuming <u>arguendo</u> that, because of his counsel's advice, Sanderson was unaware of certain rules that constituted his rights to be free of a conspiracy conviction without the government's meeting certain standards and burdens of proof at trial and that, had he known some or all of them, Sanderson would not have pled guilty, there is still no merit to the argument that his plea was less than fully voluntary as a consequence of his lack of knowledge of these rights. A criminal defendant has no right to know of every facet of the trial rights that he gives up when he pleads guilty. "[T]he law ordinarily

considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it.   A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide." United States v. Ruiz, 536 U.S. 622, 629–30 (2002) (emphases in original); see also Brady v. United States, 397 U.S. 742, 757 (1970) ("The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.").

At the change-of-plea hearing, the court engaged in a thorough colloquy to ensure that Sanderson understood the trial rights that he was waiving by pleading guilty.   See Change of Plea Hrg. Tr. at 10–13.   Moreover, Sanderson confirmed that he had "read [the Indictment] carefully," id. at 8, and "discussed it thoroughly with" his attorney, id., and that he was, except for "concern[s] about his trial preparation, . . . satisfied with his [attorney's] legal services to date," id. at 8–9.   In light of these confirmations, the court rejects Sanderson's present contention that he was without sufficient guidance about the nature of the charge against him in Count One to enter a voluntary guilty plea.

Accordingly, the court rejects this claimed basis for the Amended Petition.

### B.    Misadvice about basis of liability for substantive charges (Counts Two and Four)

Sanderson also claims that, on the basis of ineffective assistance of counsel and (at least in part) the court's statements at the plea colloquy, he misunderstood the nature of the charges to which he pled guilty and that, had he not been under those misimpressions, he would not have pled guilty.

Construed to raise the strongest arguments that it suggests in this regard, Sanderson's Amended Petition appears to complain that his counsel misled him to understand that he was pleading guilty to Counts Two and Four on the basis of Pinkerton liability, see Pinkerton v. United States, 328 U.S. 640 (1946), for his coconspirator's acts (and that he could be so liable even though the Indictment failed adequately to charge him with conspiracy,[2] see discussion of putative claim in Part III.A.1 supra).[3]

However, the record conclusively establishes that Sanderson's liability for the crimes charged in Counts Two and Four arose from his own acts, and nothing in the record reflects that Sanderson was charged on the basis of the acts of an alleged coconspirator.   The Indictment specifically states that Sanderson (and his alleged coconspirator) committed the acts in Count Two and Four.   See Indictment at 2, 3.   At the plea colloquy, the government's attorney stated that, as to each of the several

---

[2] The Amended Petition states that counsel advised Sanderson that " . . . even if the ("unlawful agreement") was not charged in the grand jury's indictment and that count one, in the indictment failed to charge an offense . . ."   Amended Petition at 15 ¶ 58.

[3] The Amended Petition states that Sanderson was misled to believe that "that Count's two and four were both in furtherance of Count one," Amended Petition at 11 ¶ 45 (all capitalization, punctuation, and emphasis in original); see also id. at 13 ¶ 50; 15 ¶ 58; 15 ¶ 60 (stating that Sanderson "believe[d] that count's two and four were the same as the first count, meaning in furtherance of both said counts" (thus in original)).

elements in both Count Two and Count Four, "the defendant" (i.e., Sanderson) and no one else was the person whose acts made him liable for the crime charged.[4]

Immediately following the government's recitation of the elements, Sanderson confirmed that he "underst[oo]d those elements," Change of Plea Hrg. Tr. at 33, and then "t[old the court] in [his] own words what [he] did that [he] th[ought] ma[d]e[ him] guilty of" the crimes charged in these two counts.  He confirmed that he, and not someone else, did all of the acts that were required to establish guilt of the offense charged—stating, inter alia, that "[he] transported [the victims] . . . to the hotels . . . [a]nd while [he] may not have known that they were under 18, [he] acted with reckless disregard about that . . . that [he] knew they were going to engage in a commercial sex act, that is to say [someone] would be paid . . . for their sex acts."  Change of Plea Hrg. Tr. at 33–34.  These facts suffice as predicates for Sanderson's guilty pleas as to Counts Two and Four.

Nothing in the Indictment, the transcript of the change of plea hearing, or any other source presented to the court corroborates Sanderson's allegations as to this claim in the Amended Petition.  Accordingly, the court rejects the claim.

---

[4] The government's attorney stated:

[T]here are four elements: First, that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained, by any means, a person under the age of 18; Second, that the defendant knew or was in reckless disregard of the fact that the person was under the age of 18; Third, that the defendant knew or was in reckless disregard of the fact that the person would be caused to   engage in a commercial sex act; And fourth, that the offense was in or affecting interstate or foreign commerce.

Change of Plea Hrg. Tr. at 32–33.

12

## IV. CONCLUSION

Sanderson has identified no error in any of his individual claims.[5]  Accordingly, the Amended Petition (Doc. No. 25) is **DISMISSED**.  In an earlier Order (Doc. No. 24), the court allowed Sanderson's Motion to Amend (Doc. No. 21).  Because the Amended Petition supersedes the original Petition (Doc. No. 1) and includes all of the claims made in the original Petition, such that the court has considered all of Sanderson's allegations in both of the Petitions in issuing this Ruling, the Clerk is directed to terminate the original Petition (Doc. No. 1) as moot.  Moreover, because Sanderson has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c)(2).

The Clerk is directed to close the case.

**SO ORDERED**.

Dated this 24th day of February 2015 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[5] The Petitioner also points to the "cumulative weight of error" alleged in the Amended Petition. Lindstadt v. Keane, 239 F.3d 191, 202 (2d Cir. 2001); Amended Petition at 21 ¶ 84.  That cumulative weight is likewise nil.